UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **BARRY J PETRY ET AL** | **CASE NO. 2:20-CV-00820** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **R360 ENVIRONMENTAL SOLUTIONS OF LOUISIANA L L C ET AL** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the Court is "R360 Environmental Solutions of Louisiana, LLC and US Liquids of La., L.P.'s Motion to Dismiss" (Doc. 14) wherein Defendants move to dismiss Plaintiffs' claims for strict liability, solidary liability, punitive damages, intentional misrepresentation and/or concealment, trespass, and claims pursuant to Louisiana Revised Statutes §§ 30:29 and 30:2015.1. By Consent Judgment dated October 20, 2020,[1] Plaintiffs dismissed with prejudice the following claims; (1) solidary liability, (2) punitive damages, (3) strict liability under Louisiana Civil Code articles 667, 2317, and 2322, reserving Plaintiffs' claims under the post-1996 versions of Louisiana Civil Code articles 667, 2317, and 2322 applying a negligence standard; and (4) fraud/concealment, with Plaintiffs reserving the right to raise concealment vis a vis contra non valentem in defense of any prescription argument raised by Defendants, should Defendants raise such an argument at a later time, with Defendants reserving the right to contest the application of concealment vis a vis contra non valentem as a defense to prescription, should Defendants raise

---

[1] Doc. 30.

prescription). Plaintiffs also submitted a First Supplemental and Amending Complaint that amended their allegations under the Usable Groundwater Act--Louisiana Revised Statute § 30:2015.1.  For purposes of this motion, Plaintiffs' only remaining claims at issue are trespass and Louisiana Revised Statute § 30:29 ("Act 312").

## FACTUAL ALLEGATIONS

Plaintiffs assert that Defendants' "waste disposal operations" at a "commercial waste disposal facility" near Jennings, Louisiana, caused "hazardous and toxic oilfield waste" to migrate (and continue to migrate) onto their property "adjacent to and west" of Defendants' facility, contaminating their soil, "groundwater" and "surface water."[2] Plaintiffs allege that Defendants are legally responsible for any and all compensatory damages associated with the damage to and contamination of the Plaintiffs' property.[3]

## RULE 12(B)(6) STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint when it fails to state a claim upon which relief can be granted.  The test for determining the sufficiency of a complaint under Rule 12(b)(6) is that A >a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.= @ *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir. 1977) (per curium) citing *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, (1957)).

---

[2] Petition for Damages, ¶ ¶ 4-10, Doc. 1-1.
[3] Id. ¶ 11.

Subsumed within the rigorous standard of the *Conley* test is the requirement that the plaintiff=s complaint be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged. *Elliot v. Foufas,* 867 F.2d 877, 880 (5th Cir. 1989). The plaintiff=s complaint is to be construed in a light most favorable to plaintiff, and the allegations contained therein are to be taken as true. *Oppenheimer v. Prudential Securities, Inc.,* 94 F.3d 189, 194 (5th Cir. 1996). In other words, a motion to dismiss an action for failure to state a claim Aadmits the facts alleged in the complaint, but challenges plaintiff=s rights to relief based upon those facts." *Tel-Phonic Servs., Inc. v. TBS Int=l, Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992).

AIn order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations. . . .@ *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir. 1992). ALegal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.@ *Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir. 1995).A[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.@ *Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir. 1995).

Under Rule 8 of the Federal Rules of Civil Procedure, the pleading standard does not require a complaint to contain Adetailed factual allegations,@ but it demands Amore than an unadorned, the defendant-unlawfully-harmed-me accusation.@*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). A complaint that offers Alabels

and conclusions@ or Aa formulaic recitation of the elements of a cause of action will not do.@ *Id.* Nor does a complaint suffice if it tenders Anaked assertion[s]@ devoid of Afurther factual enhancement.@ *Id.*, at 557, 127 S.Ct. 1955.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to Astate a claim to relief that is plausible on its face.@*Id.,* at 570, 127 S.Ct. 1955.

## **LAW AND ANALYSIS**

Defendants maintain that Plaintiffs' claim of trespass is an inappropriate theory of recovery under the law and Act 312 is inapplicable pursuant to its express terms. As noted by Defendants, Plaintiffs allege that Defendants committed an overt intentional act by their purported "knowledge of [] contamination by way of "monitoring well tests" and data.[4]

*Trespass*

To support their theory of trespass, Plaintiffs rely on the fact that Defendant purposefully stored hazardous chemicals in holes in the ground and injected said chemicals into disposal wells. Plaintiffs assert that Defendant's operations continue to contaminate the soil and ground water beneath their property. Plaintiffs argue that the hazardous and toxic oilfield waste which migrates from Defendants' facility to Plaintiffs' adjacent property is a continuing trespass. Plaintiffs further assert that Defendants know that the hazardous chemicals are migrating off their property which is why Defendants recently

---

[4] Plaintiff's Memorandum in Opposition to Defendants' Rule 12(b)(6) Motion to dismiss; Petition for Damages, ¶ ¶ 17 and 18.

purchased property between their facility and Plaintiffs' homestead for a purchase price above market value.

"The act of trespassing is an intentional tort or delict, not negligence." *Union Pac. R.R. Co. v. Taylor Truck Line, Inc.,* 2017 WL 2389411, at *2 (W.D. La. June 1, 2017) (*Union Pacific I).* The Louisiana Supreme Court has indicated that to succeed on a trespass claim, the plaintiff must show that the trespasser took some intentional, affirmative action. See *Hogg v. Chevron USA, Inc.,* 45 So.3d 991, 1002 (La. 2010) and *Terre Aux Boeufs Land Co. v. J.R. Gray Barge Co.,* 803 So.2d 86, 95 (La.App. 4 Cir. 2001)).

In *Vintage Assets, Inc. v. Tennessee Gas Pipeline Co., L.L.C.,* 2017 WL 3601215, at *3 (E.D. La. 2017), the court explained that the intentional tort of trespass requires a party to have undertaken some specific, physical act directly on the property of another— not to have mere knowledge of a harm. The *Vintage* court noted that where the trespass was caused by the passive seeping of toxic substances underground, the negligent act was not sufficient to support a claim of trespass. *Id*. at *3-*4. The Court agrees with Defendants that Plaintiffs have failed to allege that Defendants committed an affirmative, intentional and/or overt act to contaminate Plaintiffs' property. The Court finds that Plaintiffs have failed to state a claim for trespass.

*Act 312*

Act 312 (Louisiana Revised Statute § 30:29) establishes protocols and procedures for the remediation of contaminated oilfield, exploration and production sites according to regulatory standards. *State v. Louisiana Land & Expl. Co.,* 110 So.3d 1038, 1049 (La. 2013). Defendants maintain that Act 312 does not apply to Plaintiffs' claims because

Plaintiffs have not alleged that oil or gas exploration, development, or production occurred at Defendants' waste disposal facility and the disposal facility is not an oilfield, exploration or production site. Defendants argue that Act 312 only applies to litigation involving "oilfield sites" or "exploration and production (E&P) sites". Louisiana Revised Statute § 30:29(I)(5) provides the following:

> "Oilfield site" or "exploration and production (E&P) site" means any location or any portion thereof which oil or gas exploration, development, or production activities have occurred, including wells, equipment, tanks, flow lines or impoundments used for the purposes of the drilling, workover, production, primary separation, disposal, transportation or storage of E&P wastes, crude oil and natural gas processing, transportation or storage of a common production stream of crude oil, natural gas, coal seam natural gas, or geothermal energy prior to a custody transfer or a sales point. In general, this definition would apply to all exploration and production operations located on the same lease, unit or field.

Defendants argue that the disposal and/or storage of wastes must have occurred on land that was used for oil or gas exploration, development, or production for Act 312 to apply. Defendants note that numerous courts have explained that the purpose of Act 312 is to "set[] forth requirements for pursing claims of environmental damages caused by oilfield operations." *Brownell Land Co., L.L.C. v. Oxy USA Inc.,* 538 F.Supp.2d 954, 956 (E.D. La. 2007).

Plaintiffs maintain that Act 312 applies to its claims of environmental contamination and that Defendants' fail to support their argument that the Act applies only to "oilfield sites" or "exploration and production (E&P) sites" (where actual wells are drilled or where the production occurs). In other words, Defendants unsupported argument relies on an exclusive, limited interpretation of the statute.

>Act 312 defines "Environmental damage as:
>
>... any actual or potential impact, damage, or injury to the environmental media caused by contamination resulting from activities associated with oilfield sites or exploration and production sites. Environmental media shall include but not limited to soil, surface water, ground water, or sediment. Louisiana Revised Statute 30:29(I)(1).

Plaintiffs rely on *Belinda Harris, et al v. BP America Production Company, et al,* CW 08-00083, wherein the Third Circuit on a writ application seemingly adopted a more expansive definition for the application of Louisiana Revised Statute 30:29. In *Harris*, Plaintiffs brought suit for contamination of their property by a commercial gas processing plant situated on their property. The property did not have any production onsite or near the property but had a gas processing facility located on it and the oil and gas that was processed was explored for and produced miles away in the Gulf of Mexico by multiple wells, owned by multiple oil companies, from multiple leases, units and fields. The oil and gas was then transported via pipeline to the oil and gas commercial processing facility.

The Third Circuit concluded that the trial court had erred in finding the procedure set forth in Louisiana Revised Statute 30:29 is inapplicable to the plaintiffs' claims as the environmental damage alleged was "caused by contamination resulting from activities associated with oilfield sites or exploration and production sites."

Plaintiffs argue that *Harris* is analogous because Defendants accept exploration and production fluids and wastes at their facility for disposal which are generated from "drilling, workover, production, primary separation, and generated from the "processing" of oil and gas for "storage and disposal." Plaintiffs complain that Defendants' argument ignores the inclusive language of the definition which states that "exploration and

production (E&P) site means any location or portion thereof." Plaintiffs argue that Defendants' activity and Plaintiffs' claims are within the ambit of Louisiana Revised Statute 30:29 because disposal is directly included in and part of the oilfield operations and Defendants' transportation, storage, and disposal of the "E&P" waste generated from "oilfield operations" has caused the "environmental damage".

Defendants remark that the brief and non-factual decision by the Third Circuit gave no facts nor reasoning as to its opinion. Defendants argue that the storage of wastes and by-products at an unconnected, offsite commercial facility is not the same as separating oil and gas piped directly from oilfields to a separation station and processing step, which is arguably "associated" with oil field and exploration and productions sites. Defendants note that their offsite commercial waste disposal facility is regulated by the LDNR which expressly distinguishes between a generator of offsite waste, LAC 43:XIX, Chapter 5, § 501 (A generator is "any person or entity who generates or causes to be generated any E and P Waste."), and a commercial facility, LAC 43: XIX, Chapter 5, § 501 (A commercial facility is a "legally permitted E and P Waste storage, treatment and/or disposal facility which receives, treats, reclaims, stores, and/or disposes of E and P Waste for a fee or other consideration.").

The Court agrees with Defendants' that the *Harris* opinion is not analogous with the instant case as it involved a processing facility located on the property wherein this case involves an offsite waste disposal facility which is not part of the processing and is not located on the property that suffered the environmental damage.  Furthermore, the LDNR has specific regulations concerning offsite waste disposal facilities.

## **CONCLUSION**

For the reasons set forth above, the motion to dismiss will be granted dismissing Plaintiffs' claims of trespass and claims under Act 312.

**THUS DONE AND SIGNED** in Chambers on this 4th day of November, 2020.

_____
**JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE**